and Ruiz. I'd like to reserve five minutes for rebuttal, if I may. The case comes before this Court on an issue of ambiguous insurance contract provisions, and it raises two primary issues under Arizona law. The first issue is one about the automobile exclusion under a homeowner's    And the third issue is one about the vehicle exclusion under a homeowner's policy. Specifically, under Arizona law, in the setting of concurrent negligence or causation, whether there must be an independent negligent act that exists wholly independent of the use of a vehicle. That's the first issue. The second issue, as we see it, is whether the loading and unloading exclusion, a fairly common exclusion that's in a policy, as was in this case, applies under Arizona law under the facts of this case. To reach the second issue, the first one has to be addressed. District court in this case found that both exclusions apply in this case. And we would submit that, with all respect to the Court, it applied the incorrect law in coming to those conclusions, particularly in regard to the first issue as to the auto exclusion. In Arizona, there is a seminal case on the issue, which is Scottsdale v. Boehner v. Van Nguyen. And that case was not addressed by the Court. That case involved, as this Court knows from our briefing, which we addressed extensively, a case that we believe is very similar directly on point, involving preparations for the moving of a house by a truck that was towing that house. What we did not address fully in the brief would be the dissenting, the chief judge, his dissent, and the fact that he evaluated all the issues that present themselves in this case on these facts, and the fact that the Court, the appellate court in Arizona, decided to go down one track with one line of cases, while other courts, such as the Third District, the Fourth District in California, as Judge Carter, I'm sure, knows, as well as the Barge case, which applies, I believe, Ohio and or Connecticut law, although not explicitly stated, go down another track. In Arizona, the appellate court made the conscious decision, looked at the issues, and made the choice. We've discussed one of the previous cases decided in 1976 by the Second District in California, the Gonzales case. When the appellate court made that decision, the district, the dissenting chief judge, in the Arizona opinion, specifically stated it. Van Nguyen, there is no question in this case that the entire activity undertaken by the parties involved the direct use of a motor vehicle. The conclusion of the majority that the doctrine of concurrent negligence provides coverage misinterprets the nation of the so-called non-auto-related cause. This is opinion that they were misapplying the law. So when the court, I guess what we would submit is when the court looks at it, they evaluated, they had the discussion, and they decided that they wanted to go with a very narrow interpretation of ambiguous clauses when looking at exclusions, which is one of the policies of Arizona in that case. The cases cited by the court in its opinion and as well by Allstate in response to our appeal do not support application of the exclusion, or I should say they do, but they don't apply it under Arizona law. The Barge case is one of the cases that was relied upon by the court. The Barge court specifically adopted the position of the third and fourth districts in California, which is that if there is a negligent act in a concurrent negligent situation, and that second act is not wholly apart from the use of the auto, then there is no concurrent negligence under that situation, and the exclusion would generally apply. That is not the position under Arizona law. It may have been a two-to-one vote. It may have been the chief judge that dissented, but it's the law in Arizona that's been cited since then, and it's good law, and that is the law. The other opinion cited, the Elsley opinion, it's not on point. That involves injury and gets into the loading issue, which we see as a separate issue where a child is injured during the process of loading. The Phoenix opinion, although, as we point out in our brief, it's Phoenix Insurance, but it's actually a Massachusetts case involving Massachusetts law, that involves an allegation of negligence of supervision during the ride, and again, it's not Arizona law. I don't want to over-address Van Nguyen because we spent a lot of time writing about it, but that seems to us to be the seminal case, and there is nothing to say that it is not. We've also, obviously, addressed the Gonzales case upon which it relied. The Segla case, which is out of Minnesota, is very similar also. That's the case involving the bail of wire that was inappropriately tied down for transportation, which then fell off and, unfortunately, struck the motorist behind that vehicle. Once again, right there, there is nothing that can be more intertwined with the use of the vehicle than securing the load for transportation, and that's a case cited by Van Nguyen in court. What it comes down to is it's our position that the court of appeals was aware of the different take on the issue and decided to go one route, to construe things explicitly and extremely narrowly against the insurance companies when trying to apply exclusions, and they made that choice, and we believe that the record comprised by the Van Nguyen opinion and the dissenting opinion show that clearly. The second issue, if the Court doesn't have any questions on the first issue, goes back to the loading exclusion, and this is, as I said, the judge applied both exclusions and determined under the court's analysis that both exclusions applied. The loading, the cases cited by the district court to support that don't, don't mean that. The court cited four primary cases. The first is Morari, which, as I recently said by the appellate courts, States should stand on its own circumstances and goes against the general trend, including Arizona law. But that didn't address the loading and unloading solution at all in the first case. The difference is that the injury arose when the gun was being unloaded, placed into the trunk of the vehicle. So it's actually during the process of loading the vehicle where the injury arises. And that's the central issue that this Court, I'm sure, knows. I mean, not going into it, there are two general evolving thoughts across the course of time that have developed as to what the loading and unloading solution is, whether it's the coming to rest rule that should apply or whether it's the complete operation rule. Neither of them really fit into this context exactly, but if either one were applied in Arizona, it's the complete operation rule that generally is applied. But what about the case, I think it's an out-of-state, out-of-Arizona case, where the children were left in the car seat and then there was the heat exhaustion and I think they ultimately died. How does that fit in? That fits in, Your Honor. And as I recall, I'm trying to believe that was the Maryland case. I don't remember the state. Gallegos was the plaintiff's name. It was an all-state case. Correct. Correct. As we pointed out in the brief, that Court did not address that issue of concurrent negligence in that case. And it was Maryland court's opinion. As I recall from reading the opinion, and as we stated in our brief, there were specific Maryland statutes that addressed the actual liability issues in that case. If you look at the Maryland law, you can see we don't have similar statutes to those, and that was the issue presented to the Court in that case. Okay. So I think that's easily distinguishable, aside from the fact that it is from Maryland and that they do not have the interpretation of insurance exclusions as a basis. What it comes down to is the other cases cited by the Court in support of the loading and unloading exclusion, several of them are actually for the expansion of coverage under model policies, not legal policies. For example, Ohio v. Travelers, Connecticut Indemnity v. Lee, those actually address the loading and unloading coverage provided under automobile policies back in, I forget the years that those were cited, some while ago. They're not exclusion issues. So from the first point, whether, you know, trying to decide whether unloading or loading is going on, it's a different standard that's going to be applied or should be applied under Arizona law in those cases. Secondly, if you look at the Connecticut case again, they came to the conclusion that the vehicle had stopped, which was a commercial truck, that one of the individuals got out, opened the elevator doors, that they were about to deliver packages to the back of the truck, and the other driver got out and actually went back to remove the package when the incident occurred. And so it's the process of unloading and loading in which the injury occurred. All State versus Valdez, again, not an exclusion rule. That was an expanse of auto policy coverage. I may have misspoke, Rob. I believe actually all three of the others. The only one I believe that actually was involving homeowners' policy addressing the exclusion cited by the Court was Zimbardo. The other three are all expansion of homeowners' policies for coverage. If the Court does have any questions, I'll reserve the rest of my time. Thank you. Good morning. May it please the Court. My name is Jeff Butler, and I represent Allstate Insurance Company. I think the district court reached the right result here. And there are two things that I want to talk about. First is the simple application of the law to the facts. There's also a very important policy consideration which hasn't been addressed much in either the briefing or in Appellant's argument. The issue with respect to the court, the lower court's approach to the decision was, appears to be just taking the simplest tact possible to reach the decision. And what I mean by that is you take two incidents, two events, which somebody is claiming are negligent, and those two result in some injury. For purposes of coverage under the homeowners' policy that contains an exclusion for the use of an auto, it really doesn't matter much if both of those accident or injury-producing events are related to the use of an auto. That is, if both relate to the use of an auto, a homeowners' policy isn't going to cover it either way, so concurrent causation isn't an issue. It appears that the Court did here at the district court level. It didn't bother looking at cases like Van Nguyen and like Camera and like Partridge because it took what is, in essence, a preliminary step, that is, to make a determination whether the incident that Appellant's claim caused the injury, and that is the failure to load those car seats into the car, was, in fact, related to the use of an auto, or the use of an exclusive car. Appellant's counsel has mentioned that there's two separate exclusions. I think it's all just part of the same exclusion. They have different parts of it, of course, but it's all the same exclusion. In any event, one way that maybe we can put this into context is to look at what we have as a seminal decision that apparently Arizona courts as well as California courts follow, and that's the State Farm v. Partridge case. It, of course, is the seminal case dealing with the issue of concurrent causation. And if you look at those facts in that case, what you have is an individual who filed down the trigger mechanism on a gun, making it a hair-trigger mechanism, then takes that gun, puts it in his car with some buddies, goes down the road shooting rabbits, and the gun goes off because they're off-road. The issue there, of course, was sort of what we have here, which is whether an auto policy ought to provide coverage. Auto policy, as I mentioned, of course, the accident happened. It didn't happen while they were out in the car. The question with respect to the position for the filing of the trigger mechanism was something that was covered under the homeowner's policy, and the Court found that it was. And the reason why is fairly straightforward and fairly simple. And that is that if you take the filing of the trigger mechanism, which is a covered incident under the homeowner's policy, you can have that gun could go off if the individual is walking down the street or running in the woods, as the Carthage Court found. So it's a completely independent, unrelated, non-auto event that by itself was sufficient to cause the injury, and therefore the homeowner's policy was triggered. The exclusion case did not apply. If you take, then, if you try to analogize the facts to this case, then, what you have to say is, was the fact that the individuals here, the insureds, failed to put those car seats into that car the same as the individual filing the trigger mechanism? No. It's completely unrelated to the use of the automobile. And the Court found recently that that, in fact, couldn't be the case. Granted, the court, the lower court, did not use Partridge. It did not use any of the causation cases. It simply looked at the law on the issue of use, maintenance, loading or unloading of an automobile. What if the homeowner had repaired the car seat at home, then it goes in the car, and then a child is hurt because the car seat doesn't function properly? Would that be under Partridge and the homeowners would cover, or would it fall under an exclusion of the home of an automobile? You know, I realize it's hard to say, but it seems to me that that may come closer to the Partridge sort of case, because assuming that that repairing of the car seat was something that was directly related to the, that was injury-producing, if the repairs themselves were injury-producing, because then you have some separate negligence. But here there's nothing like that. Here there's something that is inextricably linked to the car, which is some car seats that somebody just didn't put in. And maybe one way that we can look at this, too, here's the thing. There's not much Arizona case law on this point, and we all know that. But what we do have is teachings from the Arizona Supreme Court about that particular exclusion. And, yes, it applies sometimes in the context of an auto policy, which is a coverage clause, as opposed to an exclusion in the homeowners, but we're not looking at the burden of proof, which is all that affects. We're simply looking at how the auto policy – sorry, how that auto exclusion works, what is, what comes within the ambit of use, maintenance, loading, or unloading. And if you look at the Ruiz and Mirari cases, they do teach you that there has to be some causal connection between the injury and the automobile. That's what they teach you. And that's what we have essentially as a basis to make a decision here from the Arizona Supreme Court. What we perhaps should do – Sotomayor Does it matter that there are laws relating to child restraints and automobiles? Gershengorn I'm not sure how that would matter. Sotomayor I'm asking you. Gershengorn Okay. So let's say that I have a bad neck, and so I always use, like, a neck thing in my car, and everyone knows it, but they forget to load it in, and then I'm injured. So is the failure to load the neck brace, does that come under the exclusion in a homeowners policy or not? Gershengorn I don't think that would, Your Honor, because I think – and the problem that we have here – let me see if I can move forward and perhaps this will answer the question. What you have, if you look at the Barge v. Jabber case, and you – it kind of helps analyze the issue. In the Barge v. Jabber case, you have an individual who takes a trailer, puts it onto the back of a truck, uses the wrong-sized ball, then drives down the road, the trailer flies off, injures somebody, and that's because the wrong-sized ball was used and they didn't put the chains on either. The court in that case didn't look at the dual causation issue, but it simply looked at the point about the use of the vehicle. The court found that in that case, there is no way to extricate the vehicle and the negligent act. And the tagline that you use on college, and I certainly quote from that decision, is that if you remove the vehicle, you remove the hazard, and perhaps that's the best way to analyze it. The same issue came up in the Camera case from the California district court – sorry, court of appeals. In the Camera case, the court also said it was an issue about a negligent design of a buggy, a later accident, and the claimant there wanted to find liability on a homeless policy by saying that the accident had nothing to do with it, it was the design of the buggy. The court did the same thing. It took the same approach as the court in Barge, and that is to say that without the driving the vehicle, if you take the vehicle out of it, there is no hazard. Here, if you look at those car seats as they were sitting in the porch where the mother left them for the buffos to put into the car when they took the children, those car seats by themselves can cause no harm. Sitting on the floor, they can cause no harm. I think the same is true with your neck brace, Your Honor. I mean, the analysis is, are those things integrally related to the use of the car? That is, if you take the car out of it, would they still produce liability? And the answer is no. And I think that that's the way to analyze it. And that's the way that the district court here analyzed it. So when you get to the end, there would need to be nothing else done in terms of the analysis than to find that the use of the car was integrally related to the car itself, and therefore, the issues about analyzing the Van Wyn decision, everything else don't matter. On the issue of the Van Wyn decision, it is a 1988 decision by a Arizona court of appeals. There are a couple of problems with that decision, which nobody has bothered to raise, but I think they're critically important. One decision is that that Van Wyn – I'm sorry, one issue is that that Van Wyn decision is a policy-based decision. It's an outcome-related decision. The court used very strong and very specific language. It said that it boggles the imagination to have the insurance company issue a policy that provides coverage to a moving company, and then when the company does, in fact, move something to disclaim coverage based on an exclusion. As the court said, immediately after making that statement about boggling the imagination, if you take – it said it's simply unreasonable to make the court hold the insured to have to pull a house or whatever it's going to move with oxen, with people, or with horses simply to find coverage. So it's clearly a policy-based decision. The court said it made – it was particularly justifiable under the circumstances. It was, of course, a commercial policy, not a homeowner's policy. The other problem, however, with Van Wyn – and it's the reason why I agree with the dissent there – is that it is based almost exclusively on the decision in Gonzales, which is a California decision, which in turn goes back to Partridge, the seminal decision that we've talked about. The problem with Gonzales is it's a decision in 1976 out of the second year in California. It came out mid-year in 76. A few months later came out the Camera decision. It's something in October of 76. The Camera decision came out of the third district, and Gonzales was roundly criticized in Camera. The court in Van Wyn acknowledged that Gonzales was – that there was a – what it called a split of authority, but the problem is you can no longer, as we sit here today, call that a split in authority. If you look at the cases in California, no case in California has cited – actually, anywhere I think is true – has cited Gonzales with approval. Certainly no case in California. Indeed, subsequently, the second district of different divisions have issued two decisions which expressly find criticism of the Gonzales decision. They expressly reject it. Even though you – Mr. Butler, even though you don't like Van Wyn, isn't that the best indication we have of what Arizona law is? Well, Your Honor, I – It's not an Arizona case contrary to Van Wyn, is there? No, although I will say that appellate counsel said that Van Wyn has been repeatedly cited. It has not. There's one decision in Michigan that has cited it, but other than that, it has not been followed. I don't know if the issue – it appears that the issue has not come up. Well, but we're supposed to apply Arizona law. Right, but I think we also need to look at the Arizona law as the court – the district court looked at it here, which is looking at the preliminary issue, not bothering with the concurrent causation. Well, a district court like you just ignored Van Wyn. Well, but again, I think it was looking at a preliminary issue, which is whether the liability-producing incident, that is what appellants claimed caused the accident or the injury, which is the failure to load those seats, was related to the use, loading, unloading, or maintenance of an automobile. So it didn't get to – I'm not sure that it ignored the Van Wyn decision. It didn't cite camera, it didn't cite partridge. It didn't deal with concurrent causation because this is a preliminary issue. Again, if both of the accidents – I'm sorry, both of the negligent incidents are related to the use of an automobile, it simply doesn't matter. There's no further analysis that is necessary. You don't have to figure out whether it's independent, whether it's related. Anything else, it really just doesn't matter. I think that's what the district court did here. It just simply took the simplest approach. Something else, though, that I think is really critically important to consider here is what the camera court did when it criticized Gonzales. And again, camera has been repeatedly cited by California courts of appeal with approval, including the very court that decided the Gonzales decision. Gonzales sits by itself, and it is the only reliance – it's the only case upon which Van Wyn relied. But if you take the criticism that camera had with respect to Gonzales, it's critically important because what it is telling you – and this gets to the policy issue of my presentation here – what it is telling you is that you will wipe out of existence an exclusion. Essentially, a homeless policy becomes an auto policy if we take the point of view that something like not putting on a neck brace, not loading a neck brace, if you will, is not related to an auto. As the camera court put it, if you have here in the streets of San Francisco, the hilly streets of San Francisco, somebody who fails to put on a park brake and a car rolls down the hill, you can have in a limited time that it was the failure to put on a park brake that caused the accident. You could say somebody failed to change the spark plugs on a car, and the failure to do so led the car to stall on some railroad tracks and the car got hit. You can conceive, as the camera court said, hundreds of situations in which this could happen. It's something that's unrelated. An individual could be driving a car, smoking a cigarette or a bottle of cigarette, reaches down to pick up the lighter to light that cigarette. Kagan. Talking on a cell phone. Talking on a cell phone is a perfect example. And then the negligence was picking up that cell phone, picking up the lighter. In essence, then, what you were doing is you're creating litigation from now on to forever, but essentially you'd be wiping out that exclusion and making an auto policy, a homeless policy, an auto policy. With respect to your very issue, Judge Tshishima, though, I understand that this is the only decision that we have here, but it was a decision from 1988. Since then, the foundation for that decision, which is a Gonzales case, has been roundly criticized by the very courts that issued it. It has been roundly criticized by all other courts. It is not a decision of the Supreme Court. If we look at the narrow issue that the district court looked at here and we apply what we have for the actual law in the State of Arizona, which is the teachings of Ruiz and of Morari, we have to conclude that the use of the vehicle is inexorably linked with the loading of the seats. That is, the loading of the seats cannot be separated from the use of the vehicle. I have one other small issue that goes to the policy, that is, the policy considerations. And that is that, you know, if we look at the Van Wyn case, it's easy to see how the court came up with its position, particularly with the strong language that it used. It was a policy that was expressly intended to cover what happened there. Here, however, we have a personal liability policy issued on a renter's home, that is, a rental home that the insureds own. The insureds failed to put the seats in their automobile at their own house. What we're trying to get here, though, is coverage from a policy in a different property that had nothing to do with this. I think the reasonable expectations doctrine here applies to find that there should be no coverage in any event, setting aside the issue about whether we're writing out of existence on exclusion. And the reason why I think this is important is because you simply have to look at the reasonable expectations of each person. In this case, we have, as a matter of fact, the reasonable expectations of the insured. He testified that he would not expect coverage. If you don't have any other questions, Your Honors, I respectfully request that you affirm the decision of the district court. Thank you. If I may, Your Honor, the idea that the district court simply went to a preliminary step before applying the Arizona law, I don't think is a tenable argument. The evaluation, as far as the ambiguousness of the clause, mandates that Arizona law actually be applied and that the Van Wyn decision had been at least evaluated by the court. It was not in that decision. And to argue that there's some preliminary step that takes place before the discussion of the law on the issue, I don't think is a maintainable position to take. In regard to Camera, that has been rejected by the Van Wyn court as far as the direction that they wanted to go, as well as all of Camera's other progeny, including the Barge case, which is not a progeny, but did line itself up with those cases. Although not cited, I believe there was an affirmation of the Barge opinion. It's an unpublished opinion. It has a footnote, which I don't cite, and I'm not saying it has any authority in any way, except that it does sort of explain the thought process of the division. And in that footnote, too, it talks about how it rejects the proposition of Gonzales and sides with the other California courts. It's a --"Courts are free to do what they want." And in this case, as far as it goes, it is Arizona that has the right to dictate its law, and it has done so in the Van Wyn opinion. That may change in the future. It is the current law as we sit here today. I would suggest that it must be applied. As far as the policy-based decisions, we've heard all State even address Van Wyn in any way. It wasn't addressed in the brief. It hasn't been addressed previously. But policy decisions as to why Arizona should not apply the current Arizona law and address policy decisions about exclusions under insurance policies for the benefit insurance companies, I don't think it's the proper venue for that argument. I don't think it's even one that should be addressed. Same thing with the rental property issue, whether that's not something that's been presented to the Court. It's not here before you. Testimony about expectations of coverage. Certainly, Mr. DeVos didn't testify that he didn't have an expectation of coverage, but he also testified as in his in the excerpt of records, he didn't read the policies, and that, subject to an objection by counsel during deposition, that had there been 10 coverages and he was only aware of one of them, he would have expected all 10, not just one. Thank you, Your Honor. Thank you. Thank both counsel for your arguments this morning. The case of Allstate v. Motes is submitted.
judges: Tashima, McKeown, Carter